# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENYOTTA C. JACKSON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-1537** |
| **BOBBY JO BRELAND - CSO II, LT. COLONEL DUNAWAY, JEFFREY TRAVIS - WARDEN, RICHARD STALDER - EX-SECRETARY, LARRY GROW - DIRECTOR LEGAL PROGRAMS, JAMES LEBLANC - SECRETARY** | **SECTION " F " (4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing. The Court held a hearing pursuant to *Spears v. McCotter*[1] on June 20, 2008, with the plaintiff, Kenyotta Jackson, and counsel for defendants participating by telephone.[2]

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991). The cassette tape of the hearing is being placed in the custody of the Court Recording Unit along with a copy of this report.

[2] Rec. Doc. No. 21.

## I. Factual Summary

### A. The Complaint and Amended Complaint

The plaintiff, Kenyotta C. Jackson ("Jackson") is incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") (f/k/a Washington Correctional Institute) in Angie, Louisiana. Jackson filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 and state law against Correctional Officer Bobby Joe Breland, Lieutenant Colonel Dunaway, Warden Jeffrey Travis, Director Larry Grow, Major John Gerald, Louisiana Department of Corrections ("DOC") Secretary James LeBlanc, and former DOC Secretary Richard Stalder. The defendants are each named in their official and individual capacities.

Jackson alleges that he has been in RCC since July 14, 2003, and he has never received a copy of the administrative rules and regulations. He further claims that he made these complaints part of his disciplinary appeal on February 8, 2008. He appeared on March 13, 2008, before a review board comprised of defendants Breland and Dunaway, and he was denied release from disciplinary confinement.

He states that he was in disciplinary confinement for violation of Prison Rule 22 for theft. His disciplinary charge allowed the prison officials to seize his belongings without due process without requiring the officials to prove the items were stolen. The prison officials also did not provide notice of which conduct exposed an inmate to which punishment level. He also claims that the conditions of the disciplinary cells were deemed unconstitutional by United States District Judge Frank Polozola of the Middle District of Louisiana. He alleges that the prison policies are unconstitutional and not in compliance with Louisiana law. He also complains that the review boards are not comprised of the proper authorities as required by federal and Louisiana law.

Jackson alleges that, as a result of the improper disciplinary proceedings, he was denied access to a law library or meaningful alternative, television, newspapers, magazines, books and a radio which resulted in his mental deterioration. He also had no access to his personal possessions, like photographs which also led to deterioration of his mental health. He could not access his legal documents or prevent their destruction by prison guards. He also complains that he was unable to purchase postage stamps, tablets, and envelopes or keep pens in his cell to assist in accessing the courts and communicate with his family. He also did not have meaningful opportunities to exercise because he wore hand and foot restraints. He also was required to be fully dressed even on hot days.

As a result, he seeks both compensatory and punitive monetary damages. He also seeks a declaration that the defendants actions, the rules and policies, and conditions of his confinement are unconstitutional under state and federal law. He further requests the court to enjoin the application of the disciplinary rules and procedures and legal programs at RCC until all inmates are provided with copies of them. Finally, he seeks the appointment of counsel and to have the matter certified as a class-action.

### B.     **The *Spears* Hearing**

Jackson testified that he went before the review board because he had been charged with a disciplinary violation. He testified that he was placed on extended lockdown after being accused of trying to sell cigarettes on the tier. He testified that he was sentenced to lockdown on the level one charge for six months. He further testified that he must serve an additional ninety days because he was sentenced to a level two violation. He also stated that other people were involved in the cigarette sales and that the cigarettes were not his. He admitted that he did not seek review in the state courts.

Jackson also again requested the appointment of counsel. Upon questioning by the Court, Jackson conceded that he sought counsel to assist him, but his documentation was destroyed by another inmate. He indicated that two of the attorneys advised him that they would not be able to take his case.

## II. Standard of Review

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

### III. Analysis

#### A. The Defendants in their Official Capacities

The plaintiff indicates that he has named each defendant in his official and individual capacity. The claims against the defendants in their official capacity are barred by the Eleventh Amendment and must be dismissed.

Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his constitutional rights. 42 U.S.C. § 1983 (2006). A plaintiff must prove both the constitutional violation and that the action was taken under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981).

However, a state actor is not, in his official capacity, considered a person for purposes of suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). In keeping with its long-standing doctrine, the Supreme Court has held that, when a state actor is sued in his official capacity, the action is considered to be one taken against the department he represents. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

In this case, these defendants are employed by the DOC, which is a department within the Louisiana state government. La. Rev. Stat. Ann. § 36:401 (2008). For Eleventh Amendment purposes, the DOC is considered an arm of the state since any money judgment against it or its subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985). Therefore, suit against the State, the DOC, and its employees in their official capacities implicates the Eleventh Amendment immunity doctrine. *Muhammad v. Louisiana*, No. 99-2694 c/w 99-3742, 2000 WL 1568210 (E.D. La. Oct. 18, 2000); *Citrano v. Allen Corr. Ctr.*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit

against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560 and *Building Eng'r. Serv. Co. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F .2d 183, 185-86 (5th Cir.1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan,* 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. Dep't of Highways,* 780 F.2d 1268, 1271-73 (5th Cir. 1986). However, the State of Louisiana has not done so. To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court." Accordingly, the Court is without jurisdiction to hear Jackson's claims for monetary relief against the State of Louisiana, the DOC, or the named defendants in their official capacities. Those claims should be dismissed without prejudice. *See Warnock v. Pecos County, Tex.,* 88 F.3d 341, 343 (5th Cir. 1996).

The Court notes, however, that the Eleventh Amendment does not protect state officials from claims for prospective injunctive relief when it is alleged that the state officials are acting in violation of federal law. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *Edelman*, 415 U.S. at 664; *Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988). To meet this *Ex Parte Young* exception in its application to a § 1983 suit, a plaintiff's suit alleging a violation of federal law must be brought against <u>individual persons in their official capacities </u>as agents of the state, and the relief sought must be<u> declaratory or injunctive in nature and prospective in effect</u>. *See Saltz v. Tenn. Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). Thus, while declaratory and prospective

6

injunctive relief can not be pursued against the State in federal court, it can be pursued against a state official sued in his official capacity. However, in this case, Jackson's surviving claims against the defendants in their official capacities and those against them in their individual capacities can be dismissed on other grounds for the following reasons.

### B. Challenge to Disciplinary Proceeding and Loss of Privileges Not Cognizable

Jackson alleges that the defendants violated his due process rights prior to and during the disciplinary proceedings and review process. His claims are barred by *Sandin v. Connor*, 515 U.S. 472 (1995).

To resolve whether a prisoner has a due process claim relating to prison disciplinary action, the Court must first determine whether a constitutionally protected liberty interest exists. *Id*. at 481-83. "Liberty interests protected by the Fourteenth Amendment may arise from two sources--the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In *Sandin*, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (citations omitted). Thus, in *Sandin*, where a prisoner was placed in disciplinary segregation for thirty days and the discipline did not inevitably affect the duration of his sentence, the Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Hewitt*, 459 U.S. at 460.

Similarly, the denial of other privileges, like access to exercise, personal items, and the library, and commissary privileges, in the instant case is not an "atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life," and is within the expected contours of plaintiff's sentence. *Sandin*, 515 U.S. at 484, 486 n.9; *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990) ("A prisoner does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system.")

Accordingly, no substantive due process deprivation arose from Jackson's disciplinary proceedings and review thereof, and he was not entitled to any particular procedures he was denied these privileges as a result of his disciplinary conviction.

### C. Failure to Exhaust Administrative Remedies

Jackson seeks to hold the defendants liable for present and future conditions of his confinement at RCC, he has failed to exhaust his administrative remedies. Included in his complaint about the conditions of his confinement, Jackson seeks monetary damages and injunctive and declaratory relief for limitations placed on his access to the law library, newspapers, magazines and books, personal photographs, and documents. While Jackson indicates that he filed for initial review of his disciplinary segregation, he conceded in the complaint and at the *Spears* Hearing that he did not exhaust administrative remedies in connection with these claims or the disciplinary appeal.

Title 42 U.S.C. § 1997e(a), as amended by the PLRA, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S.

516 (2002). Therefore, by its very terms, the PLRA applies to the § 1983 claims raised by the plaintiff.

Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-93 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id*. at 83-84. In addition, the failure to exhaust is an affirmative defense and, under the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). However, a district court may, as part of its initial screening process, dismiss a complaint for failure to state a claim based upon the plaintiff's failure to exhaust only when "the complaint itself makes clear that the prisoner has failed to exhaust." *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007).

The record shows that the plaintiff failed to exhaust the available administrative remedies both on his conditions of confinement claims and the challenge to the disciplinary process. He indicated that he did not submit his grievance to the lockdown review board because he believed that the decisions were final. During the *Spears* Hearing, he confirmed that he challenged his placement in administrative lockdown to the Secretary of State but he did not pursue his claims any further, nor did he raise the conditions of confinement claims.

Under Louisiana law, plaintiff may seek judicial review of disciplinary action, including challenges to the lawfulness of the procedures used, taken against him by filing an action in the Nineteenth Judicial District Court. *See* La. Rev. Stat. Ann. § 15:1177 (2002). If not satisfied, he may seek discretionary review in the Louisiana First Circuit Court of Appeals and then in the

Louisiana Supreme Court. *Id.*; *see also*, La. Const. Art. 5, §§ 5 and 10. Plaintiff has not pursued relief as outlined above and has not exhausted state court remedies regarding the disciplinary finding or procedures that resulted in disciplinary confinement.

Additionally, Jackson confirmed that he did not pursue any grievance challenge regarding his conditions of confinement claims, which is required by La. Admin. Code tit. 22, § 325 (2002). *See Gonzales v. Smith*, 304 F. App'x 298, (5th Cir. 2008) (exhaustion for purposes of the PLRA requires a Louisiana prisoner to comply with La. Admin. Code tit. 22, § 325 et seq.). The Court therefore finds that the plaintiff failed to exhaust the available administrative remedies as to all of his claims against the defendants. His claims can be dismissed as frivolous for that reason.

### D. State Law Claims

Jackson invoked this Court's supplemental jurisdiction under 28 U.S.C. § 1367 over his state tort claims brought, under a broad reading, pursuant to La. Civ. Code Ann. art. 2315. The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *accord Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").

The court is recommending that Jackson's federal claims under § 1983 be dismissed in their entirety. Therefore, Jackson's state law claims should be dismissed without prejudice as the Court declines to exercise its supplemental jurisdiction.

## IV. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the plaintiff's § 1983 claims seeking monetary relief against the defendants in their official capacities, be **DISMISSED WITHOUT PREJUDICE** as frivolous for lack of jurisdiction and for seeking monetary relief against defendants who are immune from suit pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that the plaintiff's § 1983 claims for prospective injunctive and declaratory relief against the defendants in their official capacities and the plaintiff's § 1983 claims against the defendants in their individual capacities be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that the plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise its supplemental jurisdiction.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 23rd day of September, 2009.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**